Hanchett v. Riverdale Distillery Co.

## SETH F. HANCHETT

### V.

## RIVERDALE DISTILLERY CO. ET AL.

1. EVIDENCE—FRAUD.—Another act of fraud is admissible to prove the fraud charged, only where there is evidence that the two are parts of one scheme or plan of fraud committed in pursuance of a common purpose.

2. EVIDENCE—NOTICE.—The court is of opinion that the evidence in this case does not disclose circumstances from which notice to appellant of the fraudulent representations of his vendor could be inferred.

3. SALE—RESCISSION.—Where one purchases goods upon false representations as to his financial ability, and the vendor, in reliance upon such representations, makes a sale, such a sale is voidable at the option of the vendor. The election to rescind or not rescind being once made is final and conclusive.

4. RESCISSION OF CONTRACT—OFFER TO RETURN CONSIDERATION.— Where parties were attempting to rescind a contract of sale and sue in replevin, and a portion of the property replevied was merchandise for which a certain note was given, and such note was not tendered before or during the trial. Held, that as to that sale, the attempted rescission was ineffectual, and plaintiff was entitled to damages for the value of that portion replevied. Quære, whether an offer at the trial to return the note would be sufficient.

5. ELECTION TO AFFIRM BY BRINGING ATTACHMENT SUIT.—Where a party being fully aware of the fraud for which he subsequently attempted to rescind a sale, brought an attachment suit, before any of the notes given for the goods were due. Held, that this was an irrevocable election to treat the transaction as a sale, and such party could not afterward rescind the sale and recover the goods sold. He can not recede from such election, because after the institution of the attachment suit, he discovers where a portion of the property has been resold and can be reached.

6. ERROR—ABSTRACT.—It is not the practice to consider errors which are assigned by a party upon matters which he does not see fit to include in his abstract.

APPEAL from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding. Opinion filed May 20, 1884.

Messrs. KRAUS & MAYER, for appellant; as to a sale being voidable, where goods are sold in reliance upon fraudulent representations, cited Benjamin on Sales, § 433; Gray v. St. John, 35 Ill. 222; Bowen v. Schuler, 41 Ill. 192; Ryan v. Brant, 42 Ill. 78.

A suit brought by the vendor against his vendee for the price of the goods with knowledge of the fraud by which the sale was effected, affirms the sale, and he can not thereafter rescind the same: Benjamin on Sales, § 442; Adler v. Fenton, 24 How. 407; Dibblee v. Sheldon, 10 Blatch. 178; Stoutenburgh v. Konkle, 15 N. J. Eq. 33; Bulkley v. Morgan, 46 Conn. 393; Butler v. Hildreth, 5 Met. 49; Conihan v. Thompson, 111 Mass. 270; Morris v. Rexford, 18 N. Y. 552; Moller v. Tuska, 87 N. Y. 166; Emma Mining Co. v. Emma Co., 7 Fed. Rep. 424; Dalton v. Hamilton, 1 Hannay (N. B.), 422; Moriarty v. Stofferan, 89 Ill. 528; Bigelow on Fraud, 425; Bigelow on Estoppel, 562 (3d Ed.); Story on Sales, Sec. 446; Derickson v. Krause, 4 Bradwell, 507; Kellogg v. Turpie, 93 Ill. 265; Kellogg v. Turpie, 2 Bradwell, 55; Gray v. St. John, 35 Ill. 222, 239; Herrington v. Hubbard, 1 Scam. 569, 573.

As to evidence of other frauds committed: Bigelow on Frauds, 480; Jordan v. Osgood, 109 Mass. 157; Simpkins v. Berggren, 2 Bradwell, 101; Johnston v. Beeney, 5 Bradwell, 601; Booth v. Powers, 56 N. Y. 22.

Mr. EDMUND JUSSEN, for appellees; that the pending of an action upon contract for goods sold and delivered will not prevent the bringing of an action for the conversion of the same goods, and at any time previous to an adjudication, a party may discontinue the one and proceed with the other, cited Wright v. Ritterman, 4 Robertson (N. Y.), 704; Butler v. Hildreth, 5 Metcalf, 49.

Hanchett v. Riverdale Distillery Co.

BAILEY, J. This is an action of debt, brought by Seth F. Hanchett, sheriff of Cook county, for the use of Joseph Massarek, against the Riverdale Distilling Company, as principal, and Patrick Cavanagh, as surety on a replevin bond. It appears that, on the 24th day of January, 1883, said distilling company commenced a suit in replevin against said Massarek, to recover fifty barrels or packages of rectified liquors; and that in execution of the writ the sheriff took from Massarek and delivered to the distilling company, sixteen barrels of various kinds of liquors, of the value, as shown by the evidence in this suit, of $770.91. The replevin suit was afterward dismissed at the plaintiff's costs without a trial, and thereupon this suit was brought.

The evidence tends to show that for a considerable time prior to the transactions in question, said company had been selling liquors to one Moritz Tausig, a brother-in-law of Massarek, on credit, taking his promissory note at each sale, due in thirty days; and that on the 2d or 3d day of January, 1883, he was owing the company about $1,100, no part of which was due; that Tausig, desiring further credit, made certain representations to the company as to his financial circumstances and responsibility, in reliance upon which the company sold him liquors on credit, on the 3d, 8th, 12th and 18th of January, 1883, each time about the same amount, and of the value, in the aggregate, of $2,220.28, and at the time of each sale took his promissory note due in thirty days.

On the 22d day of January, 1883, Tausig failed in business, and on the day following, said company having learned, as it claims, that the representations made to it by Tausig were false and fraudulent, sued out a writ of attachment against his property, for the recovery of the total amount of his indebtedness, the same being $3,343.36, none of the notes given for purchases made on or after January 3, 1883, having yet matured. On the 24th day of January, 1883, the attachment suit being still pending, the company having ascertained, as it claims, that a portion of the liquors sold to Tausig on or after January 3d had been purchased by Massarek, with knowledge of Tausig's fraud, undertook to disaffirm its sale to Tausig,

and thereupon replevied from Massarek the liquors in question in this suit, claiming them to be the identical liquors sold to Tausig.

At the trial, as proof of damages, the plaintiff, in addition to showing the value of the liquors replevied, gave evidence that Massarek was compelled to pay $100 attorney's fee and $1.50 costs in the replevin suit, and the jury found the issues for the plaintiff and assessed his damages at $101.51, thus giving him nominal damages for said liquors.

For the purpose of establishing Tausig's fraud and Massarek's knowledge and participation in it, the defendants were permitted, against the objection and exception of the plaintiff, to prove certain alleged fraudulent transactions between Tausig and Massarek in the year 1877, some six years prior to the commission of the fraud alleged in this suit. Said evidence was to the effect that, in 1877, Tausig failed and transferred his business to Massarek who had charge of it five or six months; that he then transferred it to his sister, Tausig's wife, who carried it on four or five months longer, and then transferred it back to Tausig, he in the meantime having obtained his discharge in bankruptcy. No connection whatever is shown between those transactions and the one involved in this suit. The admission of this evidence was, in our opinion, clearly erroneous.

In Jordan v. Osgood, 109 Mass. 457, the question of the admissibility of evidence of this character arose upon a state of facts quite analogous to those in this suit, and the court in holding that such evidence was inadmissible, says: "The fact that a defendant has committed a similar but distinct crime or fraud, is not competent to prove that he committed the particular crime or fraud with which he is charged. It has no tendency to prove the proposition to be established by the plaintiffs, but is equally consistent with an affirmative or negative decision of that proposition. The effect of such proof may be to produce such a state of mind in the jury, to whom it is addressed, that a less weight of testimony satisfies them than would otherwise be necessary to produce conviction; but it does not directly tend to prove or disprove the matter

in dispute.   The admission of such evidence would introduce a multiplicity of collateral issues calculated to withdraw the attention of the jury from the real issue in the case; and it would operate unjustly to the defendant, as it requires him to explain his transactions without any notice or opportunity for preparation   *   *   *   With others we think the rule to be deduced from the authorities is, that another act of fraud is admissible to prove the fraud charged, only where there is evidence that the two are  parts of  one scheme, or plan of fraud, committed in pursuance of a common purpose."

The doctrine so well and clearly stated by the Supreme Court of Massachusetts in the foregoing case, is amply sustained by authority, and receives our entire concurrence.

The evidence admitted in the present case could not but have been prejudicial to the plaintiff.   Especially is this so, in view of the extremely meagre and unsatisfactory character of the evidence tending to show knowledge on Massarek's part, of the fraud alleged to have been committed by Tausig. In fact, the evidence of the dealings between these parties in 1877, seems to be that on which the chief reliance is placed as proof of notice.

The point is made that Massarek is not shown to be a purchaser for value.   He swears, however, that he paid for said liquors at the time he purchased them, by giving Tausig his bank check for the amount of his purchase.   In this he is not contradicted, and the fact of payment must therefore be regarded as established.

He then being a purchaser for value, before the company could rescind the sale to Tausig, and follow the property sold into the hands of his vendee, it must appear, not only that Tausig was guilty of the fraud charged, but also that his vendee was a party to or bought with notice of such fraud.   The evidence warranted the jury in finding that Tausig made to said company the representations charged for the purpose of obtaining further credit; that such representations were false, and that the company relying upon their truth, sold to Tausig said liquors on credit. Massarek, however, in his testimony, denies all knowledge of the fraud, and there is no direct evi-

dence that, at the time of his purchase from Tausig, he had
any knowledge or notice that Tausig had made said representa-
tions, or that they were false.

But it is claimed that the evidence discloses certain circum-
stances from which notice may be inferred. Let us see what
they are. The counsel for the defendants has grouped them
together in his argument, and leaving out of view the dealings
between Tausig and Massarek in 1877, they are as follows:
1. Up to the date of Tausig's failure, Massarek had only a
United States license as a wholesale dealer, but upon such
failure, he immediately procured a license as a compounder
and rectifier. 2. While the deputy sheriff had possession of
Tausig's store under an execution, several barrels of wine
arrived, which had been consigned to Tausig, by a Cincinnati
firm; that the deputy sheriff refused to pay the freight and
take said wine, and that the wine was afterward found in Mas-
sarek's store. 3. Tausig, immediately after his failure, left
the city, and for about two weeks thereafter kept himself con-
cealed from his creditors, and after his return, he sold and
delivered to his customers some of the goods previously trans-
ferred by him to Massarek. 4. Mrs. Tausig, Massarek's
sister, frequently called at Massarek's store and conversed
with him, though the latter swears that she gave him no in-
formation in relation to the insolvency of her husband. These
are all the proofs counsel has been able to array on this
question.

We are unable to see why these circumstances, whether
considered separately or combined, are not quite as consistent
with a negative as an affirmative decision of the proposition
the defendants were called upon to prove. It should be re-
membered that the question of fraud by Tausig, in the dispo-
sition of his property at the time of his failure, is not in issue.
That, if proved, would have formed no ground for a rescission
by the distillery company of the sale to Tausig. The only
fraud available for that purpose, was that by which the com-
pany was induced to part with its property, viz.: Tausig's false
and fraudulent representations as to his pecuniary circum-
stances. That was the specific fraud that the company was

Hanchett v. Riverdale Distillery Co.

called upon to prove, and of that specific fraud it was bound to charge Massarek with notice. How the conclusion that Massarek, at the time he purchased the liquors from Tausig, knew that the latter had made these representations, or that such representations were false, can be legitimately or logically drawn from the facts proved, is beyond our comprehension.

The evidence as to whether the liquors replevied from Mas arek were the identical liquors sold by the distilling company to Tausig, is conflicting, and as the jury seem by their verdict to have decided that question in the affirmative, we are not disposed to interfere with their finding in that respect. The evidence, however, shows that if they are the same liquors, all, or at least a portion of them, were those sold to Tausig on the 3d of January. A very serious question arises whether as to any portion of said liquors, and especially as to those sold January 3d, the company took the requisite steps to rescind the sale so as to be entitled to maintain replevin against Tausig or his vendee for the goods sold.

The ordinary rule is, that a vendor, if he undertakes to rescind the contract of sale, must place the other party *in statu quo* by returning or offering to return whatever of value he has received. Here the company received from Tausig his notes for the price of the merchandise sold him, and it appears that at the time of the trial those notes were still in possession of said company. There is evidence to show, as above stated, that Tausig, immediately after his failure, absconded and remained concealed from his creditors until some time after the commencement of this suit, so that no opportunity was offered for returning or tendering the notes to him personally, until after suit was brought. It is urged that under these circumstances an offer at the trial to surrender the notes was sufficient, and we are referred to the case of Ryan v. Brant, 42 Ill. 78, which seems to sustain that view. But in Moriarty v. Stofferan, 89 Ill. 538, it is held that a vendor seeking to rescind a sale is not in a condition to bring replevin for the property sold, until he has offered to return the notes given therefor by the purchaser. Without attempting to reconcile the apparent conflict between these decisions, it

is sufficient to say that the evidence fails to show any offer to return the note given January 3d. Counsel for the distilling company, during the progress of the trial, tendered the notes given January 8th, 12th and 18th, but there seems to have been no tender of the other note. A part, at least, of the property replevied being merchandise for which that note was given, it is clear that, as to that sale, the attempted rescission was ineffectual, and as to that portion of the property replevied, the plaintiff was entitled to damages for its value.

But we are of the opinion that the distilling company, by bringing the attachment suit against Tausig, affirmed and ratified the sale, and that after such ratification it could not rescind and reclaim the property sold. Where one purchases goods upon false representations as to his financial ability, and the vendor, in reliance upon such representations, makes a sale, such a sale is voidable at the option of the vendor, and he may either rescind the contract and sue to recover back the goods, or he may sue for the purchase money according to the contract of purchase. But a suit brought by the vendor against the vendee for the price of the goods with knowledge of the fraud by which the sale was effected, affirms the sale, and he can not thereafter rescind the same. The election to rescind or not rescind being once made, is final and conclusive. Benj. on Sales, §§ 433, 442. The numerous authorities cited upon this point by counsel for the plaintiff fully sustain the foregoing statement of the law.

The evidence is clear and undisputed that, at the time the attachment suit was brought, the distilling company was fully aware of the fraud for which it afterward attempted to rescind the sale. Such is the testimony of its managing agent, who had charge of the business, and who caused the attachment suit to be commenced, and his evidence is not disputed. Indeed, the bringing of the attachment suit before any of the notes were due, was an election to avail itself of the fraud to the extent of rescinding the credit given to Tausig, and to sue at once for the price of the goods. This was an irrevocable election to treat the transaction as a sale, and it was thus placed beyond the power of the company to afterward rescind the sale and recover the goods sold.

Hanchett v. Riverdale Distillery Co.

As said in Conihan v. Thompson, 111 Mass. 270: "The defense of waiver by election arises where the remedies are inconsistent, as where one action is founded on an affirmance and the other upon a disaffirmance of a voidable contract or sale of property. In such cases any decisive act of affirmance or disaffirmance, if done with knowledge of the facts, determines the legal rights of the parties, once for all. The institution of a suit is such decisive act, and if its maintenance necessarily involves an election to affirm or disaffirm a voidable contract or sale, or to rescind one, it is generally held to be a conclusive waiver of inconsistent rights, and thus to defeat any action subsequently brought thereon."

But it is claimed that this case is taken out of the rule, by the fact that, after the institution of the attachment suit, the company ascertained that a portion of the goods sold to Tausig had been sold by him to Massarek, that fact being unknown to the company at the time of bringing the first suit. This, we think, will not avail the defendants. The sale of the goods to Massarek was no part of the fraud. The fraud itself, and all that properly appertained to it, had already been discovered. All the facts upon which the right to rescind or affirm the sale depended were known to the company when the first suit was brought. It might, perhaps, have waited a reasonable time before making its election, to ascertain what had become of the goods, and what would be its chances of recovering them in case of a rescission. But it chose to elect as to its remedy without doing so, and it can not recede from such election merely because of afterward discovering where a portion of the property could be reached.

The counsel for the appellant have assigned error upon the giving and refusing of certain instructions to the jury, but in his printed abstract he has included neither the instructions nor an abridgment of them. It is not the practice to consider errors which are assigned upon matters which the appellant does not see fit to include in his abstract, and for that reason we do not feel called upon to review the instructions. Shackleford v. Bailey, 35 Ill. 387; Village of Chatsworth v. Ward,

10 Bradwell, 75. But, for the errors above pointed out, the judgment will be reversed and the cause remanded.

Judgment reversed.